UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly,<br><br>                                        Plaintiffs,<br>v.<br>THE FULFILLMENT LAB, INC; RICHARD NELSON; BEYOND GLOBAL, INC.; BRIGHTREE HOLDINGS CORP.; BMOR GLOBAL LLC; DAVID FLYNN; RICKIE JOE JAMES,<br><br>                                        Defendants. | Case No.:  20cv1528-LL-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR COURT APPROVAL OF PROPOSED CLASS NOTICE PLAN**<br><br>[ECF No. 194] |

      Before the Court is Plaintiffs' Motion for approval of their proposed class notice plan. ECF No. 194. No opposition to the Motion was filed. The Court deems the Motion suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons discussed below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

On March 7, 2022, Plaintiffs filed the operative complaint, which is their Second Amended Complaint, alleging Defendants are involved in a fraudulent online scheme in which they allegedly use fake celebrity and magazine endorsements, as well as misrepresentations about price and limited availability, to induce customers into purchasing weight-loss pills branded as "Ultra Fast Keto Boost," "Instant Keto," or "InstaKeto" (collectively "Keto Products"). ECF No. 120 ¶¶ 8–14, 65–105. Defendants allegedly charge customers more than they agreed to pay, make it difficult or impossible to return the products or receive a refund, and operate "false front" websites to mislead banks and credit card companies investigating chargebacks. *Id.* Plaintiffs allege the following causes of action against Defendants: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of the unfair and fraudulent prongs of California's Unfair Competition Law ("UCL"), (4) violation of the unlawful prong of California's UCL, and (5) civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violations. *Id.* ¶¶ 234–474.

On June 23, 2023, two classes were certified and defined as the following:

(1) A nationwide class for the RICO claim consisting of all consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, were billed for shipments of either three bottles or five bottles of Ultra Fast Keto Boost, InstaKeto, or Instant Keto.

(2) A California subclass for the state law causes of action consisting of all consumers in California who, within the applicable statute of limitations period until the date notice is disseminated, were billed for shipments of either three bottles or five bottles of Ultra Fast Keto Boost, InstaKeto, or Instant Keto.

ECF No. 183 at 24.

Plaintiffs developed the proposed notice plan in consultation with Epiq Class Action and Claims Solutions, Inc. ("Epiq") and its business unit Hilsoft Notifications ("Hilsoft"), which they expect will reach at least 90% of the members of the class. ECF No. 194 at 2;

ECF No. 194-3, Declaration of Cameron R. Azari ("Azari Decl."), ¶¶ 3, 12. Plaintiffs based their proposed notice plan on the Federal Judicial Center's guidelines for class notice. ECF No. 194 at 2. Plaintiffs will send direct email notice to class members at the email addresses provided by class members when ordering Keto Products. *Id.* at 3. If an email is undeliverable, the notice administrator will correct any errors and attempt to resend the email. *Id.* If the second attempt is unsuccessful, the notice administrator will send direct notice via a postcard mailed first class through the United States Postal Service to the address provided by the class member when ordering Keto Products. *Id.* Both the email and postcard notices will direct class members to a website created and maintained by Epiq, which will provide additional information about this case and access to copies of select court filings. *Id.* at 3–4. The email, mail, and website notices will also include a post office box and email address allowing class members to contact the administrator with questions, as well as a toll-free number that will provide recorded answers to frequently asked questions. Azari Decl. ¶¶ 18, 19. The content of the proposed email notice, mail notice, and website notice was corrected by Plaintiffs at the Court's request and submitted on October 18, 2023. ECF No. 205.

## II.   LEGAL STANDARD

When a class action is certified under Federal Rule of Civil Procedure 23(b)(3), as is the case here, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language" the following: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if desired; (5) that the court will exclude any member from the class who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Federal Rule of Civil Procedure 23(c)(3). *Id.* Although reasonable efforts must be made to reach all class members, there is no requirement that each class member actually

receive notice. *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595–96 (N.D. Cal. 2020) (citing *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)).

### III. DISCUSSION

#### A. Content of the Notices

The Court generally finds the content of the proposed corrected email notice, mail notice, and website notice conveys the information required by Federal Rule of Civil Procedure 23(c)(2)(B) in plain neutral language with a few exceptions. First, to clarify to class members whether they fit into the class definition, the notices should include the appropriate specific date range of purchases that satisfies the statute of limitations. At minimum, the email notice and website notice should add this clarification. Specifically, the "Who is a Class Member?" section of the email notice [ECF No. 205-1 at 2] and question No. 10 of the website notice that asks, "Am I part of this Class?" [ECF No. 205-1 at 11] should also explain what the phrase "within the applicable statute of limitations period until the date notice is disseminated" means in terms of specific dates. The postcard notice [ECF No. 205-1 at 5] should include this clarification if space permits.

Second, question No. 11 of the website notice that asks, "Are any purchasers of Ultra Fast Keto Boost, InstaKeto or Instant Keto not included in the Class?" includes an explanation that does not fit the class definitions. ECF No. 205-1 at 11. The class definitions include consumers who "were *billed* for shipments of either three bottles or five bottles" of the Keto Products, but the explanation for question No. 11 states that consumers who did not "buy" a three- or five-product bundle are not part of the class. *Id.* It further states as an example that a person who "bought" a single bottle of a Keto Product is not a class member. *Id.* The Court notes that there is a difference between being billed for a product and buying a product, and this explanation needs to be corrected to fit the class definitions.

Third, the email address of the administrator should be consistently disclosed. It is included in the proposed email and mail notices, but it is absent from the website notice. Question No. 22 that asks, "Are more details available?" should include the email address.

*Id.* at 13. Question No. 12 that states, "I'm still not sure if I am included" should include reference to the email address listed in Question No. 22. *Id.* at 11.

Finally, the deadline and method for class members to opt out of the class action should be consistent across the notices. In the email and mail notices, the method of opting out is by letter or email sent "45 days after Notice." ECF No. 205-1 at 5, 16. However, the website notice states that the method of being excluded is to mail the exclusion request in the form of a letter—with no mention of email—that is postmarked by a specific date that will be determined.[1] *Id.* at 7, 12. The parties must decide if exclusions sent by email are appropriately binding and whether to propose permitting them. The Court strongly prefers that a specific date be set as the deadline for class members to opt out. Relatedly, Plaintiffs shall propose to the Court a specific deadline for Plaintiffs' counsel to obtain and file all opt out/exclusion notices with the Court. Additionally, for clarification, the Court requires that the instructions for opting out that directs class members to "stat[e] that you want to be excluded from *Sihler et al. v. The Fulfillment Lab Inc., et al.*" also include the case number and district. *See id.* at 12.

### B. Notice Plan

The Court finds the proposed notice plan is reasonably calculated to reach class members through individual notice and inform them of the certification of the class action. Because class members purchased the Keto Products online, the use of email addresses provided by purchasers of the Keto Products as the primary contact and addresses provided by purchasers as the secondary contact is well-suited to reach a majority of class members. The case-specific website, toll-free number for answers to frequently asked questions, and contact information for the administrator provided in the notices will provide additional

---

[1] The proposed website notice also states, "You may also get an Exclusion Request form at the website, www.website.com." It appears that the Exclusion Request will be a hyperlink. The Court interprets that the Exclusion Request will be a form that class members may print out, but must still fill out, sign, and mail as directed.

information to class members. Plaintiffs estimate the number of class members to exceed 290,000 and to be geographically dispersed across the United States. ECF No. 194 at 5. Given the size and dispersed location of the class and the method of purchase, the Court finds the proposed notice plan is the best notice that is practicable under the circumstances. *See Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 147383, at *24-25 (C.D. Cal. Apr. 2, 2021) (approving notice plan of email address, postcard if email is undeliverable, and website); *Brown v. Directv*, No. CV 13-1170-DMG (Ex), 2020 U.S. Dist. LEXIS 151283, at *3-5 (C.D. Cal. July 23, 2020) (same).

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for approval of their proposed class notice plan as follows:

1. The Court approves the method of notice.

2. Plaintiffs must revise the content of the notices to correct the deficiencies noted by the Court above and submit a Second Motion for Court Approval of Proposed Class Notice Plan ("Second Motion") on or before **November 22, 2023**. The Second Motion must contain exhibits of the red-lined revisions made to the notices. Plaintiffs must meet and confer with Defendants regarding the proposed revisions, make a good faith effort to agree on them, and indicate in the Second Motion whether Defendants plan to oppose the revised proposed content of the notices.

3. Any opposition to the Second Motion must be filed on or before **November 30, 2023**.

**IT IS SO ORDERED**.

Dated:  November 7, 2023

_____
Honorable Linda Lopez
United States District Judge