1  **KNEUPPER & COVEY, PC**
2  Kevin Kneupper, Esq. (CA SBN 325413)
   kevin@kneuppercovey.com
3  A. Cyclone Covey, Esq. (CA SBN 335957)
   cyclone@kneuppercovey.com
4  A. Lorraine Weekes, Esq. (CA SBN 332369)
5  lorraine@kneuppercovey.com
   17011 Beach Blvd., Suite 900
6  Huntington Beach, CA 92647
7  Tel: (512) 420-8407

8
9  *Attorneys for Plaintiffs Janet Sihler, Charlene Bavencoff,*
   *and the putative Class*
10

11            UNITED STATES DISTRICT COURT

12          SOUTHERN DISTRICT OF CALIFORNIA

13

14 | JANET SIHLER, Individually and On     | Case No.:  3:20-cv-01528-LL-DDL
15 | Behalf of All Others Similarly Situated;|
   | CHARLENE BAVENCOFF, Individually       | **MOTION FOR PRELIMINARY**
16 | and On Behalf of All Others Similarly   | **APPROVAL OF CLASS ACTION**
   | Situated,                              | **SETTLEMENT**
17 |
18 |                          Plaintiffs,   |
   |                                        | **Date:**  November 20, 2024
19 | v.                                     | **Time:**  *
   |                                        | **Ctrm:**  2B
20 | THE FULFILLMENT LAB, INC;              | **Judge:**  Hon. Linda Lopez
21 | RICHARD NELSON; BEYOND                 |
   | GLOBAL INC.; BRIGHTREE                 |
22 | HOLDINGS CORP.; BMOR GLOBAL            | *PER CHAMBERS RULES, NO ORAL
   | LLC; DAVID FLYNN; RICKIE JOE           | ARGUMENT UNLESS SEPARATELY
23 | JAMES; and JOHN DOES 1-10,             | ORDERED BY THE COURT
24 |                          Defendants.   |
   |                                        | Complaint Filed:  August 6, 2020
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS ...... 1

III.  THE CLASS SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........ 2

    A.  The Icebreaker Settlements Are In The Interests of the Class ........................... 3

    B.  Plaintiffs Considered Estoppel Risks in Evaluating the Settlements ................. 6

    C.  Defendants' Financial Condition Justifies Settlement ....................................... 6

    D.  Injunctive Relief Has Value to the Class .......................................................... 9

    E.  The Strength of the Plaintiff's Case ................................................................ 10

    F.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation .... 10

    G.  The Risk of Maintaining Class Action Status Throughout the Trial ................ 12

    H.  The Amount Offered in Settlement ................................................................. 12

    I.  The Relief Provided to the Class Is Adequate ................................................. 13

    J.  The Class Representative and Class Counsel Have Adequately Represented the Class ................................................................................................................. 14

    K.  The Extent of Discovery Completed and the Stage of Proceedings ................. 15

    L.  The Proposal Was Negotiated At Arms' Length .............................................. 17

    M.  The Experience and Views of Counsel ............................................................ 18

    N.  The Remaining Factors .................................................................................... 19

IV.   THE COURT SHOULD APPROVE THE PROPOSED METHOD OF NOTICE .. 20

V.    CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ...........................................................................21

*Arellano v. Kellermeyer Bldg. Servs., LLC*,
No. 13-cv-00533-BAS(BGS),
2014 U.S. Dist. LEXIS 168986 (S.D. Cal. Dec. 5, 2014) ...........................19

*Banales v. Autoclaims Direct, Inc.*,
No. 11cv2914-DHB, 2012 U.S. Dist. LEXIS 201160 (S.D. Cal. Dec. 20, 2012).........20

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842-GPC-KSC,
2017 U.S. Dist. LEXIS 80648 (S.D. Cal. May 24, 2017)............................24

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) .............................................................................3

*Burnett v. Realtors*,
No. 4:19-CV-00332-SRB,
2024 U.S. Dist. LEXIS 101100 (W.D. Mo. May 9, 2024)............................5

*Cavazos v. Salas Concrete, Inc.*,
No. 1:19-cv-00062-DAD-EPG,
2022 U.S. Dist. LEXIS 132056 (E.D. Cal. July 25, 2022)............................8

*Chan v. Brady*,
No. 20-CV-06569-LHK,
2021 U.S. Dist. LEXIS 153096  (N.D. Cal. Aug. 13, 2021) ........................14

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................3, 8

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2015)........................................................13

*Friedman v. Guthy-Renker, LLC*,
No. 2:14-cv-06009-ODW(AGRx),

2016 U.S. Dist. LEXIS 149900 (C.D. Cal. Oct. 28, 2016)...........................................26

*Hester v. Vision Airlines, Inc.*,

    No. 2:09-CV-00117-RLH-NJK,

    2014 U.S. Dist. LEXIS 48360 (D. Nev. Apr. 7, 2014)...................................................7, 9

*Hudson v. Libre Tech. Inc.*,

    No. 3:18-cv-1371-GPC-KSC,

    2020 U.S. Dist. LEXIS 84576 (S.D. Cal. May 12, 2020).................................................17

*In re Celera Corp. Sec. Litig.*,

    No. 5:10-cv-02604-EJD,

    2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) .........................................13

*In re Datatec Sys. Sec. Litig.*,

    No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007) ...........9

*In re Domestic Airline Travel Antitrust Litig.*,

    378 F. Supp. 3d 10  (D.D.C. 2019) ...............................................................................4

*In re Linerboard Antitrust Litig.*,

    292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................................4

*In re Packaged Seafood Prods. Antitrust Litig.*,

    No. 3:15-md-02670 DMS-MDD,

    2022 U.S. Dist. LEXIS 16471 (S.D. Cal. Jan. 26, 2022)................................................4

*In re Packaged Seafood Prods. Antitrust Litig.*,

    No. 3:15-md-2670 DMS-MDD,

    2023 U.S. Dist. LEXIS 42200 (S.D. Cal. Mar. 13, 2023) ...........................................25

*In re Packaged Seafood Prods. Antitrust Litig.*,

    No. 3:15-md-2670 JLS-MDD,

    2021 U.S. Dist. LEXIS 90054 (S.D. Cal. May 11, 2021)................................................2

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,

    No. MDL No. 2328,

    2014 U.S. Dist. LEXIS 181773 (E.D. La. Sep. 26, 2014) ..............................................5

*In re Processed Egg Prods. Antitrust Litig.*,

    284 F.R.D. 249 (E.D. Pa. 2012).......................................................................................5

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
  869 F.3d 551 (7th Cir. 2017).............................................................................12

*Jeter-Polk v. Casual Male Store, LLC*,
  No. EDCV 14-891-VAP (DTBx),
  2016 U.S. Dist. LEXIS 204837 (C.D. Cal. June 29, 2016) ...........................12

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
  654 F.3d 935 (9th Cir. 2011).......................................................................21, 22

*Klee v. Nissan N. Am., Inc.*,
  No. CV 12-08238 AWT (PJWx),
  2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015)................................24

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig.
  Agent Actions)*,
  148 F.3d 283 (3d Cir. 1998).............................................................................15

*Lloyd v. Navy Fed. Credit Union*,
  No. 17-cv-1280-BAS-RBB,
  2019 U.S. Dist. LEXIS 89246 (S.D. Cal. May 28, 2019)...............................23

*Loomis v. Slendertone Distribution*,
  No. 19-cv-854-MMA (KSC),
  2021 U.S. Dist. LEXIS 44047 (S.D. Cal. Mar. 8, 2021) ...............................17

*Maree v. Deutsche Lufthansa AG*,
  No. 8:20-cv-00885-SVW-MRW,
  2023 U.S. Dist. LEXIS 25130 (C.D. Cal. Feb. 13, 2023) .............................19

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) .........................................................26

*Mossberg v. Indymac Fin.*,
  No. CV07-1635-GW(VB1(x),
  2013 U.S. Dist. LEXIS 205686 (C.D. Cal. Jan. 28, 2013) ...........................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................13, 16, 23

*Nigh v. Humphreys Pharmacal, Inc.*,
  No. 12cv2714-MMA-DHB,

2013 U.S. Dist. LEXIS 161215 (S.D. Cal. Oct. 23, 2013) ...................................... 11, 12

*Preston v. Porch.Com, Inc.*,

   No. 21-CV-168 JLS (BLM),

   2022 U.S. Dist. LEXIS 75256 (S.D. Cal. Apr. 25, 2022) ............................................. 25

*Rodriguez v. W. Publ'g Corp.*,

   563 F.3d 948 (9th Cir. 2009) ......................................................................................... 16

*Sengvong v. Probuild Co. LLC*,

   No. 3:19cv2231-MMA-JLB,

   2021 U.S. Dist. LEXIS 189993 (S.D. Cal. Oct. 1, 2021) .............................................. 18

*Shahbazian v. Fast Auto Loans*,

   No. 2:18-cv-03076-ODW (KSx),

   2019 U.S. Dist. LEXIS 231416 (C.D. Cal. June 20, 2019) ........................................... 12

*Sihler v. Glob. E-Trading, LLC*,

   No. 8:23-cv-1450-VMC-JSS,

   2024 U.S. Dist. LEXIS 143497 (M.D. Fla. Aug. 13, 2024) ........................................ 14

*Silber v. Mabon*,

   18 F.3d 1449 (9th Cir. 1994) ........................................................................................ 25

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,

   No. 15-CV-3538 (VSB),

   2023 U.S. Dist. LEXIS 95908 (S.D.N.Y. June 1, 2023) ................................................ 5

*Steinberg v. Corelogic Credco, LLC*,

   No. 3:22-cv-00498-H-SBC,

   2023 U.S. Dist. LEXIS 177325 (S.D. Cal. Oct. 2, 2023) ............................................... 3

*Weber v. Gov't Emples. Ins. Co.*,

   262 F.R.D. 431 (D.N.J. 2009) ........................................................................................ 7

*Zepeda v. Paypal, Inc.*,

   No. C 10-2500 SBA,

   2015 U.S. Dist. LEXIS 150577 (N.D. Cal. Nov. 5, 2015) ........................................... 26

**Other Authorities**

4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002) ..... 10

4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.) ....................................1

Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2013) ...................15

**Rules**

Fed. R. Civ. P. 23 .........................................................................................passim

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
3:20-cv-01528-LL-DDL

## I.    INTRODUCTION

Plaintiffs and the Defendants in this lawsuit have agreed to three separate Class Settlements which would collectively resolve the putative Class's claims against the Defendants in this matter in exchange for $200,000, injunctive relief against the TFL Defendants, and "icebreaker" cooperation by Mr. Flynn and Mr. James in the Florida action currently being pursued in parallel on behalf of the Class. This agreement came after a lengthy litigation period of more than three years, an Early Neutral Evaluation (ENE) before Magistrate Judge Berg, and three settlement conferences before Magistrate Judge Leshner. While the monetary amount is not large, Class Counsel has spent considerable effort and investigation verifying representations by the Defendants that they do not have significant additional assets to satisfy the claims. The cooperation agreed to in the settlement will be of significant value to the Class in pursuing monetary recovery from other defendants in the Florida action. The settlement is, at a minimum, in "the range of possible approval," and thus the Court should grant preliminary approval and schedule the necessary proceedings for a final approval hearing after notice to the Class.

## II.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:1 (6th ed.). At the first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2) ; and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). "[W]hen considering certification of a settlement class, the court need not weigh whether further litigation would present case management difficulties as provided in Rule 23(b)(3)(D)." *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-2670 JLS-MDD, 2021 U.S. Dist. LEXIS

90054 at *61 (S.D. Cal. May 11, 2021). The Court has already certified the Class and considered the factors for certification. Dkt. 183. The question is thus whether the proposed settlement meets the standards for preliminary approval.

## III.  THE CLASS SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) "To survive appellate review, the district court must show it has explored comprehensively all factors." *Id.* Federal Rule of Civil Procedure 23(e)(2)  as amended in 2018 adds additional factors that must be considered: whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate" taking into account certain factors, and whether "the proposal treats class members equitably relative to each other."

"[A]t the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible approval' and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate." *Steinberg v. Corelogic Credco, LLC*, No. 3:22-cv-00498-H-SBC, 2023 U.S. Dist. LEXIS 177325 at *17-18 (S.D. Cal. Oct. 2, 2023). "Preliminary approval of a settlement and notice to the class is appropriate if (1) 'the proposed settlement appears to be the product of serious, informed, and non-collusive negotiations'; (2) 'has no obvious deficiencies'; (3) 'does not improperly grant preferential treatment to class representatives or segments of the class'; and (4) 'falls within the range of possible approval.' *Id.* (citations omitted).

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir.

2021) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Plaintiff submits that on these facts, the proposed settlements with the TFL Defendants, David Flynn, and Rick James are collectively a reasonable settlement given (1) their lack of assets sufficient to provide further recovery to the Class, (2) the injunctive relief TFL and Mr. Nelson have agreed to, and (3) the value of the evidence the Class has obtained as a result of these settlements.

### A. The Icebreaker Settlements Are In The Interests of the Class

The settlement proposes agreement to "icebreaker" settlements which are of significant additional value to the Class in pursuing claims against the Chargebacks911 Defendants in the Florida action. This proposal—which was negotiated at a settlement conference with the assistance of the Honorable Magistrate Judge David D. Leshner—is a fair method of arriving at reasonable damages for the nationwide Class.

An icebreaker settlement is an initial settlement in multi-defendant litigation that often "breaks the ice" and causes other defendants to consider entering serious negotiations. A court in this District approving an icebreaker settlement in a class action described them as follows: "In assessing the amount recovered here, the Court considers that, as the 'first settlement in the litigation,' this agreement carries additional 'significant value' because it may ''break the ice' and bring other defendants to the point of serious negotiations.'" *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670 DMS-MDD, 2022 U.S. Dist. LEXIS 16471 at *58 (S.D. Cal. Jan. 26, 2022).

The *In re Packaged Seafood* court also noted that where, as here, the settling defendants have agreed to cooperate against other defendants, it provides significant value to the Class: "Courts typically approve settlements that offer the first settling party a discount due to 'the significant value in and of itself as an icebreaker settlement,' particularly when, as here, the settling defendants have agreed to cooperate in the remaining litigation." *Id.*

Courts in various other districts have approved icebreaker settlements in class actions, and have noted that the key drivers of value justifying discounts in such settlements are (1) the very fact of having broken the ice and its effect on future settlement prospects, and (2)

the value of the cooperation provided by the settling defendants. *See In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 18-19 (D.D.C. 2019); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *Burnett v. Realtors*, No. 4:19-CV-00332-SRB, 2024 U.S. Dist. LEXIS 101100 at *18-19 (W.D. Mo. May 9, 2024); *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-CV-3538 (VSB), 2023 U.S. Dist. LEXIS 95908 at *12 (S.D.N.Y. June 1, 2023); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 276 (E.D. Pa. 2012); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, No. MDL No. 2328, 2014 U.S. Dist. LEXIS 181773 at *41 (E.D. La. Sep. 26, 2014).

Crucial to Plaintiffs' assessment of the value of the settlements was the existence of the parallel lawsuit on behalf of the Class in the Middle District of Florida, *Sihler et al v. Global E-Trading, LLC (d/b/a Chargebacks911), et al*, No. 8:23-cv-1450. That lawsuit was filed as a result of discovery obtained in this action, in particular a large volume of Skype messages produced by an employee of Brightree Holdings which revealed the details of their partnership with Chargebacks911. Plaintiffs have recently completed a damages report in that action, and estimates that after trebling and pre-judgment interest, that action could result in recovery of in excess of $70 million on behalf of the Class. Decl. of K. Kneupper at ¶ 31. The District Court in that case recently granted class certification over the Defendants' opposition, suggesting that the case is strong. *Id.* Any cooperation that increases the odds of success for the Class members in that case is thus of significant value to the Class.

Two of the settlements in this case required substantial cooperation by the settling Defendants (David Flynn and Rick James). Both Mr. Flynn and Mr. James agreed to five key forms of cooperation which would assist the Class in the Florida action: (1) providing copies of all written communications with any Defendants in the Florida action or their employees; (2) providing sworn declarations authenticating those documents; (3) providing sworn declarations consenting to a subpoena to Microsoft[1] for messages in their Skype

---

[1] From experience in other matters, Class Counsel is aware that Microsoft will refuse to comply with such subpoenas citing to federal law absent consent of one of the parties to the conversations.

accounts with key individuals;  (4) providing reasonable assistance in pursuing a subpoena to Microsoft; and (5) voluntarily appearing at a two-day deposition in the Florida action and testifying truthfully. Ex. 1 to K. Kneupper Decl. at § IV; ex. 2 at § IV.

The cooperation has thus far been extremely valuable to the Class in that matter. Mr. Flynn has sat for a two-day deposition in the Florida action (ensuring that Class Counsel would have adequate time to question him, rather than splitting a single day with the Defendants). Decl. of K. Kneupper at ¶ 32. This cooperation particularly crucial because Mr. Flynn, a resident of Nevada, is not within trial subpoena range of the Orlando court.[2]

Plaintiffs are in the process of subpoenaing Microsoft to ensure complete records of the Skype chats in the Florida action, a key set of contemporaneous evidence supporting the Class's claims. Decl. of K. Kneupper at ¶ 33. Plaintiffs had previously had Skype chats to which an employee of Brightree, Mike Campbell, was a party. But after Mr. Flynn and Mr. James voluntarily provided Skype chats pursuant to the settlements, those chats included a crucial new additional conversation—a lengthy set of messages between Brightree Holdings employees, Chargebacks911 employees, and an individual named Johnny DeLuca, whose actions are at the core of the allegations in the Florida action. *Id.* The Skype chats also revealed that employees of Chargebacks911—one of the Defendants in the Florida action— had not been telling the truth in making certain claims about their supposed inability to access those chats themselves in discovery. *Id.* And the chats included key evidence for a jury, including statements by participants that their conduct would raise "red flags" with payment processors and the statement about their conduct: "Someone is doing something very illegal there." *Id.*

In addition, Mr. Flynn produced e-mails with Gary Cardone, a Defendant in the Florida action, which showed Mr. Cardone's personal involvement in the scheme, including flying Mr. Flynn on a private jet to multiple cities to introduce him to additional payment processors. *Id.*

---

[2] Mr. James is a Florida resident and likely would be subject to a trial subpoena.

## B.    Plaintiffs Considered Estoppel Risks in Evaluating the Settlements

An additional risk Plaintiffs considered was the risk of facing some form of estoppel after a negative jury verdict. Decl. of K. Kneupper at ¶ 34. At the time of settlement, this matter was tracked such that it could well have gone to trial before the Florida action. No jury trial is without risk, no matter how strong the facts. *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH-NJK, 2014 U.S. Dist. LEXIS 48360 at *10 (D. Nev. Apr. 7, 2014) ("While the Class stood a strong chance of prevailing at trial on its punitive damages claim, given the Class'[s] success in the first trial of this Lawsuit, there is always risk inherent in a jury trial and that risk cannot be discounted."); *Weber v. Gov't Emples. Ins. Co.*, 262 F.R.D. 431, 445 (D.N.J. 2009) (finding that "as the Court of Appeals has recognized, a jury trial carries an inherent risk for both sides of a case").

And *pro se* Defendants act as a "wild card"—while they are at an extreme disadvantage, once the trial commences, the very fact that they have no lawyer may draw sympathy from jurors. If, for example, Mr. Flynn appeared and successfully persuaded a jury to find in his favor, it could have dramatically complicated the Florida action. The Defendants in Florida would surely argue that if Mr. Flynn was found not liable, it defeated any allegations of a RICO conspiracy. In other words, if one jury were to find that Mr. Flynn and his associates did not violate RICO, the court in Florida might find that this foreclosed the possibility of a RICO action against others based on their actions.

If there were a possibility of significant financial recovery from the Defendants in this case, Plaintiffs' counsel may have made a different decision as to settlement. But as explained further herein, Plaintiffs' counsel do not believe the Defendants here have significant assets, which makes this risk of estoppel outweigh any chance that this assessment about their assets is incorrect.

## C.    Defendants' Financial Condition Justifies Settlement

One factor which courts consider in approving settlements—and which Counsel must consider in deciding whether to settle for less than they hoped to—is the financial condition of the defendants. Here, Class Counsel believes, after a review of numerous financial

documents during and attendant to the settlement conferences, that any assets of the settling defendants would likely be exhausted by continued litigation and would preclude any additional recovery. Decl. of K. Kneupper at ¶ 34.

A settlement can be fair if the cost of continuing to pursue the defendants would not be justified given their financial condition. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992) (holding that "a settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement"); *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056 at *12-13 (E.D. Cal. July 25, 2022) (holding that it "weighs heavily in favor of granting final approval" where class counsel has reviewed financial documents suggesting that a defendant's financial condition is precarious); *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117-RLH-NJK, 2014 U.S. Dist. LEXIS 97172 at *24-25 (D. Nev. July 17, 2014) ("The Settlement will allow the Class to suspend its costly collection efforts in multiple jurisdictions, which have further increased the Class'[s] costs, yet recovered no assets on behalf of the Class because of Vision's financial condition."); *In re Datatec Sys. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 at *11-12 (D.N.J. Nov. 28, 2007) (approving a small settlement where "[a]fter reviewing confidential financial documents from Gaon, Lead Plaintiffs' counsel asserts that a contribution of $ 25,000 to the Settlement was a fair and plausible sum").

Importantly, Class Counsel did not accept Defendants' representations about their financial condition at face value. Class Counsel refused to agree to a settlement at the initial settlement conferences when Defendants first made these representations. Dkts. 196; 200. It was only after additional investigation and an additional settlement conference that Counsel concluded additional litigation would not financially benefit the Class. This included review of Mr. Flynn's tax returns and other financial documentation which had not previously been provided, investigation into TFL and Mr. Nelson's assets and into claims about the business's operations, and investigation into Mr. James (as well as verifying at his deposition that he was being deposed while inside the cab of a semi-truck

and appeared to be telling the truth about now being a truck driver with no significant assets). Decl. of K. Kneupper at ¶ 34.

With respect to Mr. Flynn and Brightree Holdings (the parent company for the other corporate defendants), it was also significant to Counsel that both of them have been subject to multiple judgments from vendors associated with Brightree Holdings. One of these judgments is for $376,572.26. Ex. 4. That judgment does not appear to have been satisfied in any way, and collection efforts by the company that obtained the judgment in October 2022 have been ongoing for almost two years. They continue to be ongoing and active based on a review of the docket for the action and a domestication of the judgment in Nevada in August 2024. Decl. of K. Kneupper at ¶ 34. A second judgment against Mr. Flynn and Brightree Holdings was for the amount of $429,557.44 and was obtained by another vendor on May 10, 2022. Ex. 5. This means that creditors with judgments totaling $806,129.70 have already had a two-year head start on the Class and have yet to satisfy those judgments—heavily suggesting that the Class will not be able to locate any additional assets after a trial.

An additional fact that Counsel considered was that Mr. Flynn, Mr. James, and the Brightree Holdings-related companies had three separate law firms in this case withdraw from representing them for non-payment of fees. Dkts. 61, 114, 158.

Class Counsel initially had significant skepticism that a company such as Brightree that made around $100 million in revenue would have no assets left, but after investigation, believes that this is, in fact, the truth. Contemporaneous Skype chats suggest that most of the money was spent on vendors and that there are no significant assets left from the Brightree Defendants to satisfy a judgment. For example, Defendant David Flynn messaged on June 9, 2020 stating that they were "upside down by about $300k…." Ex. 6. Other Skype chats with venders include litigation threats over non-payment: "Ok guys this is no time for this crap. Seriously, If a $2k good faith payment (let alone the ACTUAL $12k bill) is too much for you we'll just let all our colleagues know about it…. I'll let the boss know to move forward with litigation." Ex. 7. Plaintiffs' counsel's review of these Skype chats revealed

various other requests for payment from vendors and employees, and has led Plaintiffs' counsel to believe that Brightree's business activities were likely grossly mismanaged to the point that no money is left. Decl. of K. Kneupper at ¶ 34. Plaintiffs' counsel considered as to these Skype chats that they were being sent contemporaneously and without any apparent knowledge that they might later be revealed in a lawsuit.

While there is never a certainty that assets have not been hidden, Plaintiffs' Counsel would not have agreed to these settlements if they believed that to be the case.

### D.    Injunctive Relief Has Value to the Class

Plaintiff has negotiated injunctive relief with Defendants TFL and Richard Nelson designed to identify potential bad actors and prevent them from being able to utilize TFL's services. This includes a requirement that TFL and Mr. Nelson review and save the websites for any new clients they onboard, that they contractually require that those websites contain the actual prices consumers will be charged, that they will not knowingly ship products for a client if they know the client is misrepresenting the sales price to consumers, and that they will not enter into contracts with companies if they do not intend to provide fulfillment services for them. Ex. 3 at § V.

Injunctive relief as part of a proposed settlement "is valuable to the Class as well as consumers generally, especially considering that absent settlement, Defendant would oppose Plaintiff's standing for injunctive relief." *Nigh v. Humphreys Pharmacal, Inc.*, No. 12cv2714-MMA-DHB, 2013 U.S. Dist. LEXIS 161215 at *21-22 (S.D. Cal. Oct. 23, 2013). When examining a settlement that includes injunctive relief, it is "the complete package taken as a whole, rather than the individual component parts" that the Court considers for fairness. *Id.* "[T]he Ninth Circuit has cautioned district courts against assigning a monetary value to injunctive relief for the purpose of determining an award of attorneys' fees." *Id.* at *32. But for the purpose of approving a settlement as fair, the Court may consider whether "the injunctive relief is a substantial benefit to the Class and the general public." *Id.*

Importantly, this is not a case in which Counsel horse-traded worthless injunctive relief in exchange for a settlement which enriches class counsel who pay themselves hefty

attorney's fees, a situation which some courts have expressed concern over. *See, e.g., In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 557 (7th Cir. 2017). In fact, considering this lawsuit in isolation, Counsel will likely take a significant loss and likely not even recover their full expenses. Decl. of K. Kneupper at ¶ 35.

### E.    The Strength of the Plaintiff's Case

Even where a court believes a Plaintiff's case to be strong, courts have still held this factor to weigh in favor of settlement where the litigation is complex. *See Jeter-Polk v. Casual Male Store, LLC*, No. EDCV 14-891-VAP (DTBx), 2016 U.S. Dist. LEXIS 204837 at *8-9 (C.D. Cal. June 29, 2016) (considering the case to be strong, but subject to "risks and costs associated with future complex litigation"). Courts have recognized the inherent risks in litigation, even where a party believes its case to be strong. *Shahbazian v. Fast Auto Loans*, No. 2:18-cv-03076-ODW (KSx), 2019 U.S. Dist. LEXIS 231416 at *18 (C.D. Cal. June 20, 2019) ("Here, as with most class actions, there is risk to both parties in continuing towards trial.").

While Plaintiff believes their substantive case to be very strong, there is always an inherent risk of losing. Plaintiff still has to win a jury trial and win an anticipated appeal. There are risks inherent to litigation that this settlement avoids by providing certainty to the Class.

### F.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 at *16 (N.D. Cal. Nov. 20, 2015). "It has

been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (citations omitted).

As described above, there are significant risks, even if Plaintiff believes the case on the merits to be strong. Other courts have recognized that "RICO claims are complex claims that are expensive and time-consuming to litigate." *Chan v. Brady*, No. 20-CV-06569-LHK, 2021 U.S. Dist. LEXIS 153096 at *11 (N.D. Cal. Aug. 13, 2021). There are 257 docket entries in this lawsuit already, and the Defendants have vigorously disputed the claims and can be expected to continue to do so absent settlement. It could take an additional two years (or more) to reach finality after an appeal.

Most important to this case as to this factor is that Plaintiffs' counsel has assessed that the expense of taking this lawsuit to trial would exceed the assets of the settling Defendants. This assessment was made after the exchange of financial information under the supervision of Magistrate Judge Leshner at three settlement conferences. This means that even if Plaintiffs continued to pursue the case to trial, there would likely not be a net monetary recovery at all for the Class, at least in this matter.

Plaintiffs have also considered the risks that losing this lawsuit could have for the pending Florida action, which seeks to recover money for the same class members. Two of the Defendants, Mr. James and Mr. Flynn, are not represented by counsel. This makes their behavior and performance at trial—and the jury's reaction to it—more difficult to predict. While Mr. James has had minimal participation in the lawsuit, Mr. Flynn has actively participated, and there is no way to know how a jury will react to him defending himself or whether they will find him sympathetic as he attempts to navigate a trial without assistance. The TFL Defendants are represented by able counsel from a respected law firm, but this creates its own risks—namely, that those counsel may prevail either at trial or on significant pretrial issues.

Notably, in certifying the class in the Florida action, the court there repeatedly looked to the prior order of this Court on that issue as persuasive. *Sihler v. Glob. E-Trading, LLC*, No. 8:23-cv-1450-VMC-JSS, 2024 U.S. Dist. LEXIS 143497 at *12, 14, 20, 29, 30, 31

(M.D. Fla. Aug. 13, 2024). While this was advantageous to the class in that instance, it highlights a risk as well: that Plaintiffs would be fighting a two-front war, in two different courts, where a decision in one could significantly affect the other. If Plaintiffs were to lose a significant pretrial motion or evidentiary issue in this Court, it could well be persuasive to the Florida court in the same way—and vice versa. A loss at a jury trial in this matter could create *res judicata* or collateral estoppel issues for the Florida action, which is a serious risk given that there would likely be no monetary recovery for the Class in this action, but likely will be if the Florida action is successful.

This factor thus weighs in favor of approval of the settlement.

## G. The Risk of Maintaining Class Action Status Throughout the Trial

On this factor, the Court considers the risk of whether a class action can be maintained as a class throughout the trial. *Mossberg v. Indymac Fin.*, No. CV07-1635-GW(VB1(x), 2013 U.S. Dist. LEXIS 205686 at *9 (C.D. Cal. Jan. 28, 2013) ("Although the Court has certified a class in this case, there was always the chance that Perry could move for decertification or modification of the class… This factor, therefore, also favors settlement approval."); *see also Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 321 (3d Cir. 1998) (recognizing that ordinarily, analysis of this factor in a settlement context is perfunctory because there is always such a risk). This factor therefore favors approval.

## H. The Amount Offered in Settlement

"[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). In the context of statutes with treble damages provisions, the Ninth Circuit has held that a District Court may analyze the reasonableness of the amount of a proposed settlement against either single damages, treble damages, or both. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) ("It is our impression that courts generally determine fairness of an antitrust class action settlement based on how it compensates the

class for past injuries, without giving much, if any, consideration to treble damages…. We have never precluded courts from comparing the settlement amount to both single and treble damages. By the same token, we do not require them to do so in all cases.").

Plaintiff's estimate of the actual damages for a nationwide class is very high—over $19 million in actual damages, and likely over $70 million with trebling, prejudgment interest, and attorney's fees. Decl. of K. Kneupper at ¶ 31. The settlement of $200,000 is small in monetary terms when compared to this amount, and largely will be used to offset costs of litigation. It will not be sufficient to distribute any amount to the Class, particularly because the cost of doing so would exceed the amount available to distribute. But "you cannot squeeze blood from a turnip"—in other words, a person cannot pay money into a settlement if they do not have it. The information available to Class Counsel heavily suggests that at least for the Defendants in this litigation, further litigation would serve only to exhaust remaining assets, and the Class's efforts at recovery are better focused on the Florida action.

## I.        The Relief Provided to the Class Is Adequate

FRCP 23(e)(2)(C) requires that the relief provided in a class settlement be adequate, taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). As to whether the relief is adequate, "[t]he amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 U.S. Dist. LEXIS 84576 at *17 (S.D. Cal. May 12, 2020).

The adequacy of the amount negotiated has been addressed above. The costs, risks, and delay of trial and appeal have likewise been addressed above.

As to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the key questions are whether these methods are unduly burdensome and whether they deter or defeat illegitimate claims. *Loomis v. Slendertone Distribution*, No. 19-cv-854-MMA (KSC), 2021 U.S. Dist. LEXIS 44047 at *17-18 (S.D. Cal. Mar. 8, 2021). The settlement proposes to create pre-populated claim forms based on the granular class member data available from Defendants' databases. Ex. 3 at section VI ¶ 1. The forms may be submitted via mail or via a website portal. *Id.* In *Loomis*, the Court held that "any subjective burden by a Class Member would be sufficiently mitigated by the toll-free helpline and settlement website to provide assistance." *Loomis*, 2021 U.S. Dist. LEXIS 44047 at *17. This settlement provides for both. Ex. 3 at section VII ¶ 1(b). Epiq, the settlement administrator, has further provided a declaration describing how this claims process will be tailored to ensure that claims are easy to file. Decl. of C. Azari at ¶ 25-27, 31-32. As for illegitimate claims, because both Quick Box and Konnektive have produced spreadsheets with detailed information about the class members and their identities, it is unlikely that illegitimate claims would be successful.[3]

As to the terms of any proposed award of attorney's fees, including timing of payment, the amount of any attorney's fees have not been negotiated, and will be subject to approval by motion. Further, Plaintiffs' counsel anticipates that they will be seeking only reimbursement of expenses; they will not seek to recover any fees.

As to "any agreement required to be identified under Rule 23(e)(3)," there is no such agreement, and the terms of the executed settlement were the only agreement made by the parties in connection with this settlement proposal. Decl. of K. Kneupper at ¶ 38.

## J.    The Class Representative and Class Counsel Have Adequately Represented the Class

FRCP 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." As to this factor, courts consider in

---

[3] This issue is more of a concern in class actions with no identifying records for the class, for example, when class members bought products in a retail store.

part the experience of counsel. *See Sengvong v. Probuild Co. LLC*, No. 3:19cv2231-MMA-JLB, 2021 U.S. Dist. LEXIS 189993 at *7-8 (S.D. Cal. Oct. 1, 2021). Class Counsel are experienced in both complex litigation and consumer law. Decl. of K. Kneupper at ¶ 1-29; decl. of C. Covey at ¶ 1-22. The adequacy of the value of the cooperation of the Defendants, who do not have substantial monetary assets to recover from, is further evidence that both counsel and Plaintiffs Sihler and Bavencoff have adequately represented the Class. Plaintiffs Sihler and Bavencoff have further represented the Class and actively participated in this litigation for more than four years, and are continuing to do so in the ongoing Florida action to attempt to recover a substantial monetary payment for the Class.

### K.    The Extent of Discovery Completed and the Stage of Proceedings

In considering "the extent of discovery completed and the stage of the proceedings," courts have focused on whether "sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently…." *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 U.S. Dist. LEXIS 25130 at *25-26 (C.D. Cal. Feb. 13, 2023) (quoting Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2013)). Courts consider the extent of both formal and informal discovery as to this factor. *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ("However, 'in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'").

Courts have previously found this factor to weigh in favor of approval in cases that have been litigated for several years with multiple mediations. *See Arellano v. Kellermeyer Bldg. Servs., LLC*, No. 13-cv-00533-BAS(BGS), 2014 U.S. Dist. LEXIS 168986 at *23-24 (S.D. Cal. Dec. 5, 2014). Similarly, in a case where Defendants had produced 3,000 pages of documents, a substantial amount of ESI, and had taken multiple depositions, the court found this to be extensive discovery that justified settlement approval. *Banales v. Autoclaims Direct, Inc.*, No. 11cv2914-DHB, 2012 U.S. Dist. LEXIS 201160 at *5-6 (S.D. Cal. Dec. 20, 2012).

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This case was filed on August 6, 2020 and has been pending for more than four years. Prior to filing this lawsuit, Plaintiff's counsel spent more than eight months investigating the specific claims in this lawsuit in detail. Decl. of K. Kneupper at ¶ 37. Plaintiff's counsel further had been conducting an industry-wide investigation into similar allegations against other companies which lasted much longer. *Id*. Those informal investigations continued during the pendency of the lawsuit. *Id*. The TFL Parties, Mr. Flynn, and Mr. James provided confidential information regarding their financial assets pursuant to the settlement conferences held under the direction of Magistrate Judge Leshner. *Id.* This information included relevant tax returns. *Id.* Plaintiff's counsel further obtained publicly available information about (1) real estate assets held by the Defendants, (2) corporations in which the Defendants had a financial interest; (3) vehicles or boats registered to the defendants; and (4) publicly available information from LinkedIn profiles or online posts showing changes in the number of employees at Defendant TFL. *Id*. Plaintiffs obtained detailed information about the transaction volume for the Keto Products sold during discovery. *Id*. Plaintiffs further obtained detailed financial information about Brightree Holdings during discovery. *Id.* Plaintiffs' counsel also questioned Mr. Flynn under oath about the financial status of several of the Defendants during hearing in a bankruptcy case filed by Beyond Global, Inc. *Id*.

There have been numerous discovery issues resolved by the Court, including eight discovery conferences conducted either by Magistrate Judge Berg or Magistrate Judge Leshner addressing various discovery disputes. Dkt. 53, 55, 75, 83, 87, 165, 172, 203. The TFL Defendants produced more than 15,000 pages of documents. Decl. of K. Kneupper at ¶ 37. Beyond Global, Inc. further produced financial data about itself. *Id*. A third party witness, Mike Campbell, produced more than 10,000 pages of Skype messages. *Id.* Each of the individual defendants was deposed. *Id*. Multiple TFL employees were deposed as well. *Id.* David Flynn was questioned under oath at a bankruptcy hearing regarding the financial status of Beyond Global, Inc. *Id*. Plaintiffs' counsel submitted requests to various state attorney generals under state freedom of information laws and obtained documents through

these requests. *Id.*

In addition, Plaintiff had insight into the merits of the lawsuit both from the Court's rulings on multiple rounds of motions to dismiss (dkts. 31, 45) and its ruling granting class certification (dkt. 183).

Plaintiff's counsel thus had more than adequate information available to assess the strength of their case.

## L.    The Proposal Was Negotiated At Arms' Length

Rule 23(e)(2)(B), as amended in 2018, now requires that the Court consider whether the proposed class settlement "was negotiated at arm's length." The Ninth Circuit has laid out certain factors which Courts should consider in conducting the "higher level of scrutiny for evidence of collusion or other conflicts of interest" that is required for pre-certification settlements. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). This includes a requirement that the Court look for certain "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* (quoting *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)).

Those signs of self-dealing include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id.*

None of these signs exist here. There is nothing in the proposed agreement as to the amount that counsel will receive. Instead, that issue has been left for the Court itself to resolve via motion. *See, e.g.*, Ex. 3 at section IV ¶ 5(a); section IX. It is likely that there will not be enough left after expenses to make a distribution to the Class economically feasible, which weighs against a conclusion that there has been any collusion.

As to the second sign of self-dealing, a clear sailing arrangement, there is none in this settlement.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
3:20-cv-01528-LL-DDL

As to the third sign of self-dealing, an agreement to revert unclaimed fees to the defendants, again, there is none.

Not only are there no signs of self-dealing, but there are many signs to the contrary. The settlement was negotiated only after an initial Early Neutral Evaluation before Magistrate Judge Berg, dkt. 49, as well as three subsequent settlement conferences with Magistrate Judge Leshner, dkt. 196; 200; 247. *See Bluetooth*, 654 F.3d at 948 (holding that the "presence of a neutral mediator," while not dispositive, is "a factor weighing in favor of a finding of non-collusiveness").

Other aspects of the settlement discussed herein further suggest a lack of collusion. The case was not one in which class counsel sought a quick settlement: it was instead a hard-fought one with extensive discovery, as well as extensive investigation pre-suit, and an amount that reflects Class Counsel's willingness to pursue the case zealously as far as needed to secure a favorable recovery for the Class. Counsel pursued the claims until they had satisfied themselves that it was unlikely that any significant recovery would be made on behalf of the Class from these Defendants if the case were pursued to trial, and only after the Defendants agreed to nonmonetary benefits to the Class in the form of either cooperation in the Florida action or injunctive relief.

## M.    The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2019 U.S. Dist. LEXIS 89246 at *33 (S.D. Cal. May 28, 2019) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Counsel for Plaintiff in this case are highly experienced in complex litigation. *See* Decl. of K. Kneupper at ¶¶ 1-29; Decl. of C. Covey at ¶ 1-22. Counsel are further highly experienced in consumer law cases, and the law firm of Kneupper & Covey currently

maintains a docket of over 200 active individual consumer law cases in either arbitration or litigation. Decl. of K. Kneupper at ¶ 29. The law firm has settled or recovered judgments in over 500 individual consumer law cases, and counsel are regularly involved in numerous mediations or settlement discussions. *Id.* at ¶ 30. In 2023, these individually settled or recovered cases by Kneupper & Covey amounted to more than $2.5 million. *Id.*

Based on their experience, Counsel for Plaintiff believe this is a favorable settlement for the Class. With respect to TFL and Mr. Nelson, the settlement provides for injunctive relief designed to identify bad actors in the future and prevent any further involvement with them. This includes a requirement that TFL and Mr. Nelson review and save the websites for any new clients they onboard, that they contractually require that those websites contain the actual prices consumers will be charged, that they will not knowingly ship products for a client if they know the client is misrepresenting the sales price to consumers, and that they will not enter into contracts with companies if they do not intend to provide fulfillment services for them.

With respect to Mr. Flynn, Mr. Nelson, and the Brightree Holdings-related companies, Counsel believes they have no assets and are no longer selling these products. They have also provided additional evidence in the form of Skype chats and other evidentiary materials for use on behalf of the Class in the Florida action.

When weighed against their financial condition, which in Counsel's view would likely not support any further recovery, Counsel believes that this was the best result that could be obtained for the Class from these Defendants.

## N.    The Remaining Factors

As to the presence of a governmental participant, "[n]o government entity participated in this case. Under these circumstances, this factor is neutral." *Klee v. Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270 at *28 (C.D. Cal. July 7, 2015). With respect to the reaction of the class members to the proposed settlement, "[t]he Class has yet to be notified of the Settlement and given an opportunity to object; thus it is premature to assess this factor." *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC,

2017 U.S. Dist. LEXIS 80648 at *17 (S.D. Cal. May 24, 2017).

As to whether "the proposal treats class members equitably relative to each other," Plaintiffs do not expect there to be a distribution because the amount recovered is not significantly in excess of the notice costs. The settlement is treats class members equitably relative to one another.

While Plaintiffs intend to seek an incentive award in line with 9th Circuit authority, see Ex. 3 at section X(2), the amount was not negotiated as part of the settlement and the Court will ultimately determine whether such an award is proper, and if so, the amount. Such incentive awards do not constitute inequitable treatment of class members. *Preston v. Porch.Com, Inc.*, No. 21-CV-168 JLS (BLM), 2022 U.S. Dist. LEXIS 75256 at *19 (S.D. Cal. Apr. 25, 2022).

## IV.    THE COURT SHOULD APPROVE THE PROPOSED METHOD OF NOTICE

After the Court has determined that a settlement should be preliminarily approved, it must order that the parties provide notice to the settlement class. *See* Fed. R. Civ. P. 23(e)(1). The parties must provide the absent class with the "best notice practicable" under the circumstances. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). While this standard does not demand individual notice to every class member, it does require "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-2670 DMS-MDD, 2023 U.S. Dist. LEXIS 42200 at *46 (S.D. Cal. Mar. 13, 2023). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Class has previously received notice of this action via postcard, e-mail notice, and website notice after the class was initially certified. Given that the amount being recovered is relatively low, and given this prior notice, the parties propose that notice of this settlement be made via e-mail notice and website, with supplemental postcard notice to Class members for whom e-mail notice is not possible due to invalid e-mail addresses or other reasons.

This method has specifically been approved in class actions involving the sale of online products. *See Friedman v. Guthy-Renker, LLC*, No. 2:14-cv-06009-ODW(AGRx), 2016 U.S. Dist. LEXIS 149900 at *33 (C.D. Cal. Oct. 28, 2016) ("Because the majority of WEN hair product sales were made online, e-mail is already the primary method of communicating receipts, promotions, and delivery information."); *Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 U.S. Dist. LEXIS 150577 at *24 (N.D. Cal. Nov. 5, 2015) ("Here, notice to the Settlement Class will be sent by e-mail, which is the primary method that PayPal uses to communicate with its subscribers."); *see also Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1264 (S.D. Fla. 2016) ("[E]mail notice in class actions is used regularly and has been approved in many federal courts throughout the United States.") (collecting cases).

Also of note is that Federal Rule of Civil Procedure 23 does not require the best possible notice, but "the best notice that is practicable under the circumstances…." The 2018 Advisory Committee notes to Federal Rule of Civil Procedure 23 state: "the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. The court should exercise its discretion to select appropriate means of giving notice."

One key factor to this is that there are several hundred thousand class members—meaning that cost is a significant factor given the size of the settlement. Given that the Class has already received notice once, e-mail notice is likely to be sufficient. The parties have agreed to a notice plan designed to make sure that as much of the Class receives notice as possible. The proposed notice forms are attached as Exhibits 4-8 to the executed settlement with The Fulfillment Lab. Ex. 3. They have been drafted in plain English in an attempt to make them easily readable to Class members. The parties have agreed to consult with the Class Administrator regarding additional targeted notice via internet advertising and other procedures. *Id.* at section VI(2)(e). These include, for example, re-mailing postcards using new address data for any that are returned. Decl. of C. Azari at ¶ 24.

The parties have selected Epiq Class Action and Claims Solutions as the settlement administrator to handle the notice plan. Ex. 3 at section II(39). Epiq handled the prior notice in this matter. While Plaintiffs previously intended to seek a joint notice with the Florida action, the judge in that matter ordered separate notice for that case.

## V.    CONCLUSION

Plaintiff respectfully requests that the Court should grant preliminary approval and schedule the necessary proceedings for a final approval hearing after notice to the Class.

DATED: October 16, 2024                                **KNEUPPER & COVEY, PC**

                                                       /s/Kevin M. Kneupper
                                                       Kevin M. Kneupper, Esq.

                                                       *Attorneys for Plaintiffs Janet Sihler,*
                                                       *Charlene Bavencoff, and the putative*
                                                       *Class*