**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: (512) 420-8407

*Attorneys for Plaintiffs Janet Sihler, Charlene Bavencoff, and the putative Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE FULFILLMENT LAB, INC; RICHARD NELSON; BEYOND GLOBAL INC.; BRIGHTREE HOLDINGS CORP.; BMOR GLOBAL LLC; DAVID FLYNN; RICKIE JOE JAMES; and JOHN DOES 1-10,<br><br>Defendants. | Case No.: 3:20-cv-01528-LL-DDL<br><br>**DECLARATION OF KEVIN KNEUPPER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     November 20, 2024<br>Time:    *<br>Ctrm:    2B<br>Judge:   Hon. Linda Lopez<br><br>*PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Complaint Filed:  June 12, 2020 |

I, Kevin M. Kneupper, do hereby declare as follows:

1. I am a partner at Kneupper & Covey PC, counsel for Janet Sihler and Charlene Bavencoff. I am licensed to practice law in the States of California and Texas. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. I am highly experienced in complex litigation, in particular litigation involving technological issues. I am further highly experienced in consumer protection litigation, both in individual cases and in class actions.

3. I graduated from the University of Texas School of Law in 2005, ranked 4th in my class of more than five hundred students. From 2005 through 2007 I clerked for the Honorable Judge James L. Dennis on the Fifth Circuit Court of Appeals. I was recognized by name in an *en banc* Fifth Circuit opinion for my contributions as a clerk to work on a complex series of death penalty cases. *Nelson v. Quarterman*, 472 F.3d 287, 316 n.1 (5th Cir. 2006) (Dennis, J., concurring).

4. From 2007 through 2016 I worked for the law firm of McKool Smith PC, and was ultimately a principal in the firm. McKool Smith is one of the most highly regarded plaintiff's law firms in the country, and is particularly known for its strength in complex technological cases. I worked on a number of lawsuits there, a selection of which are discussed below, and was a member of the trial team in eight complex lawsuits that went to jury trials.

5. I represented Versata and was a member of the trial team in *Versata Software, Inc. Et Al v. SAP America, Inc. et Al*, 2:07-cv-153 in the Eastern District of Texas, a patent infringement case involving enterprise software called a "pricer" that automated price determinations and discount applications. There were two trials in the case—a first trial in which Versata won $139 million in damages, and after an intervening change in Federal Circuit law on the calculation of damages, a $345 million verdict in a separate retrial of the damages issues. I represented Versata in both trials and managed a team of attorneys in the retrial of damages.

6. I represented Versata and was a member of the trial team in *Autodata Solutions, Inc. v. Versata Software, Inc. et al*, 2:12-cv-704 in the Eastern District of Texas,

a patent infringement case involving enterprise software. I managed discovery in the case and presented one of the key witnesses at trial.

7. I represented Versata and was a member of the trial team in *Versata Software, Inc. et al v. Sun Microsystems, Inc.*, 2:06-cv-358 in the Eastern District of Texas, a patent infringement case involving enterprise software called a "configurator" that automatically configured the parts used in manufacturing by large corporations as product designs are changed.

8. I represented KeyBank and was a member of the trial team in *Datatreasury Corporation v. Wells Fargo & Company et al*, 2:06-cv-72 in the Eastern District of Texas, a patent infringement case involving check imaging technology. The case settled mid-trial.

9. I represented Unwired Planet in *Unwired Planet, LLC v. Apple, Inc.,* 3:13-cv-4134 in the Northern District of California, a patent infringement lawsuit involving a number of technologies relating to mobile phones. I was in charge of managing the case and leading the discovery team. I further participated in the technical analysis of various iPhone features, including Siri and the gyroscopic technology used in the iPhone.

10. I represented Halliburton in *Myklatun et al v. Halliburton Energy Services Inc et al*, 5:09-cv-770 in the Western District of Oklahoma, a breach of contract and tortious interference case involving microemulsion technology, a chemical used to enhance oil well production. I managed the lawsuit in its entirety for much of the case, and after successfully excluding the damages expert for Myklatun on *Daubert*, my client settled its portion of case the night before the first day of trial.

11. I represented Rambus, Inc. in *Rambus, Inc. v. Hynix Semiconductor, Inc. et al*, and was part of the trial team in a jury trial in the Northern District of California. The case involved DRAM technology, a kind of memory used in computers.

12. I was a member of a technical team analyzing the Deepwater Horizon oil spill incident and its causes for Halliburton as part of the Deepwater Horizon litigation.

13. I represented Parkervision in *Parkervision, Inc. v. Qualcomm Incorporated*, 3:11-cv-719 in the Middle District of Florida, a patent infringement case involving cell

phone signal downconversion technology. I was a member of the trial team which obtained a jury verdict of $173 million in damages on behalf of Parkervision.

14.   I represented Solid State Storage Solutions in *Solid State Storage Solutions, Inc. v. Stec, Inc. et al*, 2:11-cv-391, in a patent infringement case involving hard drive technology. I led discovery efforts and was in charge of brief writing.

15.   I have worked on numerous other cases, including in shareholder litigation and other patent infringement and complex business litigation.

16.   From 2016 through 2018 I spent a sabbatical writing novels, short stories, and screenplays.

17.   In mid-2018 I began studying class action law and consumer law in preparation to found my own law firm.

18.   In August 2019, I formed Kneupper & Covey PC and am a founding partner in the firm.

19.   I have represented or currently represent consumers in numerous consumer class action cases since starting our firm. For example, I am currently co-counsel in *McKinney v. Corsair Gaming, Inc.*, No. 3:22cv312 (N.D. Cal.), a case alleging that RAM products used for gaming were sold using various misrepresentations and omissions related to "overclocking" of the chip speeds. Our firm partnered with Dovel & Luner, a highly respected consumer law firm, to pursue those claims. As another example, several of our other class action suits targeted the "free trial scam," a long-running scam which has plagued consumers online in which they are signed up for fake free trials, but then billed hundreds of dollars every month that they never agreed to. Using methods ranging from source code and server analysis to a John Doe lawsuit with subpoenas, we have successfully identified a number of participants who have been engaging in the scam for years without being caught and had gone to great lengths to hide themselves. Our firm developed customized software designed not only to archive websites to preserve evidence of these scams, but we developed a "crawler" which automatically searched online to locate websites that were utilizing a kind of illegal software called a "load balancer" which rotates

merchant accounts from various shell companies as part of credit card laundering schemes commonly used in these scams.

20. Our "free trial scam" lawsuits have resulted in the defendants in one of our cases being named as unindicted co-conspirators in a criminal indictment in the Southern District of New York. Our investigation and lawsuit revealed that those Defendants were also helping operate an investment scam to defraud investors in a publicly traded cannabis company on the Canadian stock exchange.

21. I have further represented hundreds of individual consumers in various consumer protection cases. Along with my partner, A. Cyclone Covey, I have been in charge of three mass arbitrations, in which we have filed large numbers of arbitration claims against the same defendants. The first of these has settled and the details are confidential, but involved around 100 consumers. That mass arbitration involved cases around the country and involved claims brought under the consumer laws of more than 30 states.

22. The second mass arbitration was against Vroom, an online car dealer, under warranty claims that generally involve a failure to provide title to purchasers of cars. I represented roughly 250 consumers in that mass arbitration, and the bulk of them involved Texas's Deceptive Trade Practices Act (an analogue consumer statute to California's CLRA). Those claims also involve breach of warranty and UCC claims, the federal Magnuson-Moss Warranty Act, and breach of the warranty of title. Many of our clients had been unable to drive their cars for months (or even years) at a time due to the risk of impoundment or arrest. Our firm's efforts to force Vroom to properly title the cars it sold to our clients have been featured in multiple media outlets. *See* Justin Gray, *Vroom customers say months after buying cars, they still can't legally drive them*, WSB-TV (June 29, 2022), available at https://www.wsbtv.com/news/local/vroom-customers-say-months-after-buying-cars-they-still-cant-legally-drive-them/JGNLZ7X26FBIJG32MPALCO2HUE/, Jason Stugenke, *'A rat race': Driver blames Vroom for license plate issues*, WSOC-TV (June 2, 2022), available at

https://www.wsoctv.com/news/local/rat-race-driver-blames-vroom-license-plate-issues/JUUZNBEIL5HDNHQ3QAPTYU4FE4/; Karin Price Mueller, *He bought a car from Vroom, but 2 years later he still doesn't have the title. Now it's in an impound lot*, NJ.COM (Sept. 26, 2022), available at https://www.nj.com/news/2022/09/he-bought-a-car-from-vroom-but-2-years-later-he-still-doesnt-have-the-title-now-its-in-an-impound-lot.html,

23. Our firm is also pursuing a third mass arbitration involving a bankrupt solar panel provider, Pink Energy, which was accused of a number of improper and fraudulent practices affecting tens of thousands of people. Many of those people have non-functioning solar power systems as a result, or were never compensated for fraudulent sales representations or damage to their homes during installation. We have onboarded a number of clients to pursue the lenders under the FTC Holder Rule. As a result of my work trying to protect victims of fraudulent practices in the solar power industry, I was interviewed by Time Magazine. *See* Alana Semuels, *Rooftop Solar Power Has a Dark Side*, TIME, Sept. 26, 2023, available at https://time.com/6317339/rooftop-solar-power-failure/.

24. I have represented a number of different consumers in individual arbitrations as well. For example, I have represented a consumer with non-functioning solar panels who were being billed using faked power generation data or consumers whose solar panels were improperly installed resulting in damage to their homes. I regularly represent consumers in arbitrations under EFTA or TILA involving banks who refuse to conduct a proper investigation of fraud claims or credit their accounts.

25. I also routinely represent individual consumers in California in both state and federal court. For example, I have represented a consumer who was sold a vehicle service contract by a company that refused virtually all car repairs from its customers and consumers who were sold programming courses for tens of thousands of dollars but ended up with shoddy and overhyped course materials. I have represented consumers against unfair debt collection efforts under both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. I have represented a consumer faced with a 90% interest loan whose

bank accounts were being garnished even after she had paid far more than the original principal, and I succeeded in lifting a default judgment that had been issued more than five years earlier by proving that the metadata in contemporaneous photographs she took showed that the affidavit of service was false because she was not at home at the time five years earlier. I have also represented an elderly consumer who was deceived into purchasing solar panels (and whose contract was signed by the salesperson).

26. I have represented consumers not only under the main California consumer protection statutes (the Consumer Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL"), but have also represented consumers from other states in numerous arbitrations under various state consumer protection laws.

27. As part of my writing hobby, I filed a *pro se* trademark challenge against a trademark on the word "cocky" which was being asserted against various romance novelists who used the word in the titles of their books. The challenge resulted in the cancellation of the trademark and ensured that authors of romance novels could use the word freely without risk of legal action against them.

28. My efforts to protect consumers and others have received international media attention in a variety of news publications, including Courthouse News, Bloomberg, Vox, The Guardian, Slate, The Daily Mail, Bustle, and The Verge, all of which have reported on lawsuits I was involved in.

29. At any given time, Kneupper & Covey represents more than 350 clients in active matters in consumer law cases. Our firm currently employs five full-time attorneys (other than Mr. Covey and myself). We employ another part time attorney who primarily handles intake matters. Mr. Covey and I as well as one of these full-time attorneys are barred in California, while the other full-time attorneys are barred in Georgia and New York/Texas. In the event of a jury trial, we expect that our other attorneys would be able to file *pro hac vice* applications to participate and would meet the standards for doing so. The other attorneys working full-time at our firm have excellent academic records at top-

ranked schools such as Stanford Law School (ranked 2nd best law school nationally), Yale Law School (ranked best law school nationally), and Emory University School of Law (ranked 30th best law school nationally), and they come to work for us for the opportunity to help make socially impactful change using the legal system. Our firm has adequate resources and staff to pursue this class action.

30. I reviewed our firm's internal data regarding our settlements. Our law firm has either settled or recovered judgments in over 200 individual consumer law cases in 2023. We are regularly involved in numerous mediations or settlement discussions in those cases (whose settlements are negotiated individually even if they are categorized as part of a mass arbitration). In 2023, these individually settled or recovered cases by Kneupper & Covey amounted to more than $2.5 million. We have settled over 500 consumer cases in total.

31. In a parallel action in the Middle District of Florida, *Sihler et al v. Global E-Trading, LLC (d/b/a Chargebacks911), et al*, No. 8:23-cv-1450, in which our firm also represents the plaintiffs, we have submitted a damages report from an expert witness, and based on that report I believe that the ultimate potential damages after trebling, pre-judgment interest, and attorneys' fees will likely exceed $70 million. The District Court in that case has granted class certification and appointed our firm as counsel. *Sihler v. Glob. E-Trading, LLC*, No. 8:23-cv-1450-VMC-JSS, 2024 U.S. Dist. LEXIS 143497 (M.D. Fla. Aug. 13, 2024).

32. Mr. Flynn has sat for a two-day deposition in the Florida action (ensuring that Class Counsel would have adequate time to question him, rather than splitting a single day with the Defendants). I understand Mr. Flynn to be a resident of Las Vegas, Nevada, which means he would not be in trial subpoena range for the Middle District of Florida.

33. Plaintiffs are in the process of subpoenaing Microsoft to ensure complete records of the Skype chats in the Florida action, a key set of contemporaneous evidence supporting the Class's claims. Plaintiffs had previously had Skype chats to which an employee of Brightree, Mike Campbell, was a party. But after Mr. Flynn and Mr. James

voluntarily provided Skype chats pursuant to the settlements, those chats included a crucial new additional conversation—a lengthy set of messages between Brightree Holdings employees, Chargebacks911 employees, and an individual named Johnny DeLuca, whose actions are at the core of the allegations in the Florida action. The Skype chats also revealed that employees of Chargebacks911—one of the Defendants in the Florida action—had not been telling the truth in making certain claims about their supposed inability to access those chats themselves in discovery. And the chats included key evidence for a jury, including statements by participants that their conduct would raise "red flags" with payment processors and the statement about their conduct: "Someone is doing something very illegal there." In addition, Mr. Flynn produced e-mails with Gary Cardone, a Defendant in the Florida action, which showed Mr. Cardone's personal involvement in the scheme, including flying Mr. Flynn on a private jet to multiple cities to introduce him to additional payment processors.

34. My partner and I considered a number of different things in determining that this settlement was a good one for the class. We considered the risk of facing some form of estoppel after a negative jury verdict (whether in whole or in part), particularly given that it appeared that this case would be tracked ahead of the Florida action. We considered that *pro se* Defendants act as a "wild card"—while they are at an extreme disadvantage, once the trial commences, the very fact that they have no lawyer may draw sympathy from jurors.

We also considered the assets of the Defendants, and after reviewing confidential documents during the settlement conferences before Magistrate Judge Leshner, as well as our own independent investigation, we concluded that continuing on in this case would likely exhaust the assets of the settling defendants with minimal (or potentially even no recovery at all). We did not accept Defendants' representations about their financial condition at face value, even after being shown supporting documentation. We refused to agree to a settlement at the initial settlement conferences when Defendants first made these representations. We demanded additional documentation, including review of Mr. Flynn's

1 tax returns and other financial documentation which had not previously been provided. We conducted our own investigation into TFL and Mr. Nelson's assets and into claims about the business's operations, which included asset searches as well as verification of certain information through online investigation. With respect to Mr. James, he claimed to currently be a truck driver with no significant assets. We investigated his assets as well, and also were influenced by the fact that he appeared at his deposition to testify from inside the cab of a semi-truck, and activities in the background of the video (including individuals approaching his truck) provided confirmation of this. With respect to Mr. Flynn, our investigation revealed existing judgments against him as well as Brightree Holdings which were actively being collected upon, which suggested to us not only (1) that if he had assets, we would be beaten to them by the other parties, and (2) that if he had significant assets these other attorneys would likely have found them already, but they did not appear to have been able to. We reviewed the dockets for those cases, as well as a domestication of a Florida judgment in Nevada in August 2024, which suggested that they had not yet been satisfied. An additional fact that Counsel considered was that Mr. Flynn, Mr. James, and the Brightree Holdings-related companies had three separate law firms in this case withdraw from representing them for non-payment of fees, which suggests they no longer had money to pay for attorneys. Dkts. 61, 114, 158. Mr. Flynn and Mr. James testified that they have no money left, which is corroborated by various Skype messages from vendors to Mr. Flynn complaining about non-payment or threatening litigation. Plaintiffs' Counsel believes, based on all of the materials reviewed and their investigation, that Brightree's business activities were likely grossly mismanaged to the point that no money is left.

35. If the settlements in this lawsuit are considered in isolation (i.e., without including any potential recovery from the Florida action), Plaintiffs' Counsel will likely take a significant loss given the amount of time that was spent investigating and pursuing the claims, and will likely not even recover their full expenses after the costs of notice (including the prior notice sent after the class was certified) are included.

36. This case involved a lengthy pre-suit investigation of more than eight months.

Our investigation continued as the suit progressed, and we have informally obtained a number of materials that we believe allow us to make an informed decision about the value of the case in conjunction with discovery. While the case-specific investigation here began in roughly October 2019, I had been informally investigating the affiliate marketing industry and the "free trial scam" generally for a significant period of time prior to that.

37. The TFL Defendants have produced more than 15,000 pages of documents in this lawsuit. Beyond Global, Inc. further produced financial data about itself. A third party witness, Mike Campbell, produced more than 10,000 pages of Skype messages. Each of the individual defendants was deposed. Multiple TFL employees were deposed as well. *Id.* David Flynn was questioned under oath at a bankruptcy hearing regarding the financial status of Beyond Global, Inc. Plaintiffs' counsel submitted requests to various state attorney generals under state freedom of information laws and obtained documents through these requests.

38. My partner and I only agreed to Epiq after we conducted an interview with them for a prior matter and were satisfied with, in particular, their technical understanding of targeted Internet advertising, as well as their performance in the prior matter.

39. There are no agreements required to be identified under Rule 23(e)(3). The parties did not make any "side agreements" as part of the settlement and incorporated the entire agreement into the executed settlement.

40. Attached as **Exhibit 1** is a true and correct copy of the fully executed settlement agreement with Defendant David Flynn.

41. Attached as **Exhibit 2** is a true and correct copy of the fully executed settlement agreement with Defendant Rick James.

42. Attached as **Exhibit 3** is a true and correct copy of the fully executed settlement agreement with Defendants The Fulfillment Lab, Inc. and Richard Nelson.

43. Attached as **Exhibit 4** is a true and correct copy of a judgment in favor of Affiliati Network, LLC against David Flynn and Brightree Holdings.

44. Attached as **Exhibit 5** is a true and correct copy of a judgment in favor of

Cogent, LLC against David Flynn and Brightree Holdings.

45.  Attached as **Exhibit 6** is a true and correct copy of an excerpt of a Skype chat produced by third party Mike Campbell titled core1.

46.  Attached as **Exhibit 7** is a true and correct copy of an excerpt of a Skype chat produced by third party Mike Campbell titled with one of Brightree's vendors.

I declare and state under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed this 16th day of October, 2024 in San Francisco, California.

*/s/ K.K.*

Kevin M. Kneupper, Esq.
Declarant