UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly,<br><br>                                    Plaintiffs,<br><br>v.<br><br>THE FULFILLMENT LAB, INC; RICHARD NELSON; BEYOND GLOBAL, INC.; BRIGHTREE HOLDINGS CORP.; BMOR GLOBAL LLC; DAVID FLYNN; RICKIE JOE JAMES,<br><br>                                    Defendants. | Case No.: 20cv1528-LL-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**<br>[ECF No. 264]<br><br>**(2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD**<br>[ECF No. 263] |

Before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlements [ECF No. 264] and Motion for Attorney's Fees, Costs, and Incentive Award [ECF No. 263]. No opposition has been filed. Additionally, no objections were filed by the November 5, 2025 deadline. ECF No. 267 at 3–4; *see also* ECF Nos. 259 at 16. On November 19, 2025, the Court held a hearing pursuant to Federal Rule of Civil Procedure

23(e)(2). ECF No. 266. For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motions.

## I. BACKGROUND

### A. Operative Complaint and Procedural History

Plaintiffs Janet Sihler and Charlene Bavencoff initiated this class action lawsuit on August 6, 2020. ECF No. 1. It involves an alleged fraudulent scheme in which Defendants allegedly use fake celebrity and magazine endorsements, as well as misrepresentations about price and limited availability, to induce consumers into purchasing weight-loss pills branded as "Ultra Fast Keto Boost" and "Instant Keto" (or "InstaKeto") (collectively "Keto Products"). ECF No. 120 ¶¶ 8–14, 65–105. Defendants allegedly charge customers more than they agreed to pay, make it difficult or impossible to return the products or receive a refund, and operate "false front" websites to mislead banks and credit card companies investigating chargebacks. *Id.* Plaintiffs claimed that but for their reliance on Defendants' false and misleading representations and omissions about the Keto Products, they would not have bought them or would have paid less for them. *Id.* ¶ 63.

Plaintiffs alleged that Defendants worked together to perpetrate this fraudulent scheme. *Id.* ¶¶ 13, 14. Defendants David Flynn, Rickie Joe James, Bmor Global LLC, Beyond Global Inc., and Brightree Holdings Corp. were the marketers and branders of the Keto Products (collectively "Keto Defendants"). *Id.* ¶¶ 11, 13. They allegedly created the landing pages viewed by consumers and the false front websites shown to bank and credit card companies. *Id.* ¶ 11. Defendant The Fulfillment Lab, Inc. ("TFL"), owned by Defendant Richard Nelson (collectively "TFL Defendants"), was the fulfillment company that allegedly provided generic "white label" products to Keto Defendants, assisted them with affiliate marketing and advertising, distributed the products to consumers, and handled returns when customers complained. *Id.* Plaintiffs alleged that The Fulfillment Lab, Inc. was the fulfillment company for the Keto Products and that both products were the same white-labeled products offered by TFL Defendants. *Id.* ¶¶ 192–97.

/ / /

Plaintiffs alleged the following causes of action against all Defendants: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of the unfair and fraudulent prongs of California's Unfair Competition Law ("UCL"), (4) violation of the unlawful prong of California's UCL, and (5) civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violations.[1] *Id.* ¶¶ 234–474.

On June 23, 2023, the Court granted Plaintiffs' motion for class certification and certified the following classes pursuant to Federal Rule of Civil Procedure 23(b)(3):

> (1) A nationwide class for the RICO claims consisting of all consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, were billed for shipments of either three bottles or five bottles of Ultrafast Keto Boost, InstaKeto, or Instant Keto.
>
> (2) A California subclass for the state law causes of action consisting of all consumers in California who, within the applicable statute of limitations period until the date notice is disseminated, were billed for shipments of either three bottles or five bottles of Ultrafast Keto Boost, InstaKeto, or Instant Keto.

ECF No. 183 at 24.

On July 5, 2023, Plaintiffs filed notice of a related case that had been filed in the Middle District of Florida ("Florida Action") on June 28, 2023, and stated that assigning the two cases to a single district judge would not be likely to "effect a saving of judicial effort and other economies." ECF No. 186; *Sihler et al. v. Global E-Trading, LLC (d/b/a Chargebacks911), et al.*, No. 8:23cv1450 (M.D. Fla.). The Florida court certified a nationwide class, defined as follows: "All consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, were billed for shipments of either three bottles or five bottles of Ultrafast Keto Boost, InstaKeto, or

---

[1] Plaintiffs alleged that Keto Defendants directly violated the California consumer statutes and that TFL Defendants violated them by aiding and abetting and conspiring with Keto Defendants. ECF No. 120 ¶¶ 241–56, 275–89, 309–23, 399–413. For the RICO claim, Plaintiffs alleged that all Defendants violated the statute, but to the extent that TFL Defendants did not directly commit predicate acts, they conspired to do so. *Id.* ¶¶ 418, 472.

Instant Keto." Order at 3, 33, *Sihler et al. v. Global E-Trading, LLC (d/b/a Chargebacks911), et al.*, No. 8:23cv1450 (M.D. Fla. Aug. 13, 2024). The Florida Action has since reached a $12.5 million settlement that is pending approval. ECF Nos. 264 at 8; 263-5; 267 at 5.

On June 18, 2025, the Court granted Plaintiffs' motion for preliminary approval of the class action settlements. ECF No. 259. The Court incorporates by reference the analysis and findings of the order granting preliminary approval of the class action settlements.

On October 5, 2025, Plaintiffs filed their Motion for Attorney's Fees, Costs, and Incentive Award. ECF No. 263. On October 15, 2025, Plaintiffs filed their Motion for Final Approval of Class Action Settlements. ECF No. 264. On November 12, 2025, Plaintiffs filed a Notice of Timely Requests for Exclusion from the Class. ECF No. 265.

On November 19, 2025, the Court held a hearing on the instant Motions. ECF No. 266.

**B.     Settlement Terms**

The parties agreed to three separate class settlement agreements, without admittance of liability or truth of the allegations, that would collectively resolve all claims in this action against all Defendants. ECF No. 264 at 8; ECF Nos. 264-1 at 14–54, *see also* ECF No. 260-1 at 2–26. Specifically, the proposed settlement agreement between Plaintiffs and Defendants David Flynn, Bmor Global LLC, Brightree Holdings Corp., and Beyond Global, Inc. ("Flynn Defendants") provides for cooperation by the Flynn Defendants in the related Florida Action on behalf of the same class as in this case in exchange for a dismissal of all claims with prejudice. ECF No. 264-1 at 14–17. Similarly, the proposed settlement agreement between Plaintiffs and Defendant Rick James ("James") provides for cooperation by James in the related Florida Action in exchange for a dismissal of all claims with prejudice. ECF No. 264-1 at 22–25. Finally, the proposed settlement agreement between Plaintiffs and the TFL Defendants provides for $200,000 and injunctive relief "designed to identify potential bad actors and prevent them from being able to utilize TFL's services" in exchange for a dismissal of all claims with prejudice. ECF Nos. 264 at 15;

264-1 at 35, 40–41. The $200,000 is to be distributed in the following order: "to pay the Settlement Administrator for notice and settlement administration costs; to pay the Class Representative Service Award, as awarded by the Court; and to compensate Plaintiffs' Counsel for their fees and expenses, as awarded by the Court." ECF No. 264-1 at 35.

Following the Court's preliminary approval of the settlements, the settlement administrator executed the Court-approved notice plan. ECF Nos. 264 at 8; 264-1 at 102. Through October 15, 2025, the settlement administrator sent 257,379 emails, 79,000 postcards, and a follow-up mailing of 550 re-mailed postcards. ECF No. 264 at 8. On November 12, 2025, class counsel reported that 43 class members and 166 non-class members requested exclusion. ECF Nos. 265 at 2, 265-1, 265-2. No objections to the Motions were filed by the November 5, 2025 deadline. ECF No. 267 at 3–4.

## II.  FINAL APPROVAL OF SETTLEMENTS

### A.  Legal Standard

The Ninth Circuit has a "strong judicial policy" favoring class action settlements. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Still, if a settlement "would bind class members," a court "may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This is due to the "inherent risk" that "class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee," which presents "unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted).

Factors to consider are whether: (1) "the class representatives and class counsel have adequately represented the class;" (2) the settlement was "negotiated at arm's length;" (3) the "relief provided for the class is adequate" given the "costs, risks, and delay of trial and appeal," the method and effectiveness of distributing relief or processing class-member claims, "the terms of any proposed award of attorney's fees," and any agreement made in connection with the settlement; and (4) the settlement "treats class members equitably

relative to each other." Fed. R. Civ. P. 23(e)(2); *Briseno v. Henderson*, 998 F.3d 1014, 1023–24 (9th Cir. 2021).

Courts also weigh: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *Bluetooth*, 654 F.3d at 946).

### B.  Adequate Representation and Experience and Views of Counsel

The Court finds the class representatives and class counsel have adequately represented the class. There is no indication of any conflicts of interest between the class representatives, class counsel, and the class. Class counsel are experienced in both complex litigation and consumer law, have represented consumers in several consumer class action cases, and represented hundreds of individual consumers in various consumer protection cases. ECF No. 264-1 at 2, 4–5; ECF No. 264-2, Declaration of Cyclone Covey ("Covey Decl."), ¶¶ 15, 17. Since this case was first filed more than five years ago, Plaintiffs Sihler and Bavencoff and class counsel have vigorously prosecuted this action on behalf of the class. Class counsel believes this is a favorable settlement for the class, and given Defendants' financial condition, the best result that could be obtained. ECF No. 264 at 25–26. Given class counsel's experience in consumer law and class actions, combined with their extensive time and resources committed to litigate this case, their views may be considered reasonable. The Court finds these factors favor approval of the settlements.

### C.  Negotiated at Arm's Length

The Court finds the settlement agreements were negotiated at arm's length. The parties participated in four settlement conferences with a magistrate judge, which is "a factor weighing in favor of a finding of non-collusiveness." ECF Nos. 49, 196, 200, 247; *Bluetooth*, 654 F.3d at 948. Settlement also came after extensive discovery and investigation. ECF Nos. 264 at 24; 264-1 at 10–11. This factor weighs in favor of approval.

### D. Adequate Relief and Amount Offered in Settlement

The Court finds the settlements provide adequate relief. Although the $200,000 settlement amount is a negligible percentage of Plaintiffs' estimate of actual damages for a nationwide class and "largely will be used to offset costs of litigation," the Court finds Plaintiffs have shown that a larger recovery is not possible due to the financial condition of Defendants. ECF No. 264 at 19; *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (citation omitted)); *Class Plaintiffs v. City of Seattle*, 955 F.2d at 1295 ("[A] settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement."). Class counsel reviewed confidential documents, demanded additional documentation such as tax returns, and investigated Defendants' assets and financial situations before concluding that "continuing on in this case would likely exhaust the assets of the settling defendants with minimal (or potentially even no recovery at all)." ECF No. 264-1 at 9–10. Plaintiffs also state that the substantial cooperation and evidence gained by settlement with the Flynn Defendants and James has been extremely valuable to the class in the related Florida Action, which has a settlement of $12.5 million pending approval for the same class members. *Id.* at 8–9, 11, 155; ECF No. 264 at 11–12, 19–20; ECF No. 267 at 5. Finally, Plaintiffs negotiated injunctive relief with Defendants TFL and Richard Nelson that benefits the general public by actions "designed to identify potential bad actors and prevent them from being able to utilize TFL's services." ECF No. 264 at 15–16; s*ee Nigh v. Humphreys Pharmacal, Inc.*, No. 12CV2714-MMA-DHB, 2013 WL 5995382, at *11–12 (S.D. Cal. Oct. 23, 2013) (declining to assign a dollar amount to the injunctive relief but finding it substantially benefits the class and the general public when viewed in light of the results obtained as a whole). The settlements here do not provide monetary relief for class members but benefited them by producing evidence that led to a $12.5 million settlement for the class in the related Florida Action.

In determining whether the "relief provide for the class is adequate," the Court must also consider the "costs, risks, and delay of trial and appeal," the method and effectiveness of distributing relief or processing class-member claims, "the terms of any proposed award of attorney's fees," and any agreement made in connection with the settlement. Fed. R. Civ. P. 23(e)(2)(C).

The Court has taken the above factors into account and finds the settlement amount and relief is adequate. Although the class was certified, there will always be additional costs with a trial and any appeal, as well as a risk of losing. *See infra* Section II.F. There is no relief to distribute to class members and no agreement made in connection with the settlement to consider. The settlement does not contain any terms for attorney's fees and instead, Plaintiffs filed a separate motion. In scrutinizing the motion for attorney's fees, the Court finds no signs of collusion.[2] *See infra* Part III. The majority of the monetary settlement is for reimbursement of costs of the litigation, and there is no "clear sailing arrangement" or reverter clause that returns unawarded fees to Defendants.

Accordingly, the Court finds that after viewing the settlements as a whole and acknowledging the financial condition of Defendants, coupled with the risk of taking this complex case to trial with uncertain results, the settlements provide adequate relief to the class. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). These factors favor approval of the settlements.

---

[2] Courts must consider the following factors "to smoke out potential collusion": "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno*, 998 F.3d at 1023 (internal quotation marks and brackets removed) (quoting *Bluetooth*, 654 F.3d at 947).

### E. Equitable Treatment

The Court finds the settlements treat class members equitably relative to each other because there is no difference in the relief obtained by class members. This factor favors approval.

### F. Strength of Plaintiffs' Case; Risk of Further Litigation; Risk of Maintaining Class Action Status

Although Plaintiffs believe their case is strong, the inherent risks of trial do not guarantee a favorable outcome. Both sides have vigorously litigated this case since it was filed five years ago; there are over 250 entries in the docket. Without a settlement, the case would continue incurring expenses as it proceeded to trial and possibly appeal. Courts have recognized that "RICO claims are complex claims that are expensive and time-consuming to litigate." *Chan v. Brady*, No. 20-CV-06569-LHK, 2021 WL 3604694, at *4 (N.D. Cal. Aug. 13, 2021), *aff'd,* No. 21-16464, 2023 WL 2707383 (9th Cir. Mar. 30, 2023). Additionally, class counsel assessed that due to Defendants' financial conditions, the cost of taking this lawsuit to trial would likely exceed Defendants' assets, resulting in no monetary recovery from these Defendants. Finally, although Plaintiffs were granted class certification, there is always a risk that Defendants could move to decertify or modify the class. Having considered the strength of Plaintiffs' case; "the risk, expense, complexity and likely duration of further litigation"; and "the risk of maintaining class action status throughout the trial," the Court finds these factors weigh in favor of approval of the settlements.

### G. Extent of Discovery and Stage of Proceedings

In assessing the extent of discovery and the stage of proceedings, the Court considers whether the parties have sufficient information to "make an informed decision about settlement." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (citation omitted). This case has been litigated for over five years, with eight discovery dispute conferences, more than 15,000 pages of documents, more than 10,000 pages of Skype messages, depositions of each individual defendant as well as multiple TFL employees, two rounds of motions to

dismiss, and a ruling granting class certification. ECF Nos. 31; 45; 183; 264 at 22–23; 264-1 at 11. The Court finds the parties have more than enough information to make intelligent decisions. *See Maree v. Deutsche Lufthansa AG*, No. 820CV00885SVWMRW, 2023 WL 2563914, at *9 (C.D. Cal. Feb. 13, 2023) ("What is required at this stage is that 'sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently.'" (citation omitted)). This factor favors approval of the settlements.

### H. Governmental Participant

This factor is neutral because there is no governmental participant in this action.

### I. Reaction of Class Members

The "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted). The Court approved a notice plan that informed class members of the settlements and prospective request for attorney's fees, costs, expenses, and service awards, including how to request exclusion or submit an objection, which has since been executed. ECF Nos. 259 at 10–15; 264-1 at 102; 265. No objections have been filed with the Court or served on counsel. ECF No. 267 at 3–4. Out of the 336,929 notices sent by email or postcard, approximately 43 class members have opted out of the settlements. ECF Nos. 264-1 at 102; 265 at 2; 265-1 at 2–3. The lack of objections and small number of exclusions indicate the settlements are viewed as favorable to class members, and therefore this factor favors approval of the settlements. *See Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 529.

### J. Conclusion as to Final Approval of Settlements

Considering the factors discussed above, the Court finds the settlement agreements are fair, reasonable, and adequate and **GRANTS** Plaintiffs' Motion for final approval.

/ / /

/ / /

## III. ATTORNEY'S FEES, COSTS, INCENTIVE AWARDS

Plaintiffs request $45,570.98 for attorney's fees, $91,980.48 for costs, $50,448.54 for class notice expenses, and $12,000 for an incentive award to be equally shared between the two class representatives, for a total of $200,000. ECF No. 263 at 28–29, 33.

### A. Attorney's Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h). Courts have an "independent obligation to ensure that the award, like the settlement itself, is reasonable." *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id*. at 942. The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer," subject to an "upward or downward" departure based on other "reasonable" factors like "the benefit obtained for the class." *Id*. at 941–42.

"Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Aichele v. City of Los Angeles*, No. CV1210863DMGFFMX, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015). When using the percentage-of-recovery method, courts "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942. The percentage alone is not per se valid, however, so courts use factors such as the following to determine reasonableness of the requested amount: (1) "the extent to which class counsel 'achieved exceptional results for the class,'" (2) "whether the case was risky for class counsel," (3) "whether counsel's performance 'generated benefits beyond the cash settlement fund,'" and (4) "the burdens class counsel experienced while

litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). Courts may also cross-check the percentage-of-recovery amount against a lodestar calculation. *Id.* at 955.

The Court finds the percentage-of-recovery method is appropriate for the common fund in this matter. The attorney's fee request of $45,570.98 is almost 23% of the $200,000 fund, which is below the 25% benchmark. Although the percentage is reasonable in comparison to the benchmark, the Court will also consider other factors to make a final determination of reasonableness.

### 1. Results Achieved

Class members will not receive a direct monetary benefit from the settlements in this case, but the cooperation gained through these settlements was instrumental in obtaining a $12.5 million settlement in the related Florida Action. Subpoenaing Microsoft for Skype chats in the Florida Action was only achieved with signed consent forms from two of the Defendants in this action. ECF No. 263 at 15; ECF No. 263-2, Declaration of Kevin Kneupper ("Kneupper Decl."), ¶ 38. That cooperation was one of the provisions of the settlement agreements in this matter. ECF No. 264-1 at 14–17, 19–20, 22–25, 27–28. After obtaining the Skype records, Plaintiffs learned that an employee of a defendant in the Florida Action had deleted messages with Defendant Flynn immediately after learning about the Florida lawsuit. ECF Nos. 263 at 15; 263-3. As a result, the employee was ordered to submit his phone for a forensic examination, which recovered messages that class counsel describe as highly important in supporting Plaintiffs' allegations in the Florida Action. ECF Nos. 263 at 15; 263-3; 263-4. Class counsel contend that these messages and their deletion were a key factor in obtaining the $12.5 million settlement in the Florida Action on behalf of the same class in the instant matter. ECF No. 263 at 15; ECF No. 263-5. The Court agrees that the results achieved benefited the class, which supports granting the requested fees.

### 2.   Litigation Risk

"[R]isk should be assessed when an attorney determines that there is merit to the client's claim and elects to pursue the claim on the client's behalf," which will "likely occur before a lawsuit is filed." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002). When class counsel committed to this case, they had not yet discovered the identities of all defendants in this case and the related Florida Action and filed it "as part of a broader investigation of the 'affiliate marketing' industry." ECF No. 263 at 16; Kneupper Decl. ¶ 31. Class counsel dedicated significant time and effort investigating the conduct underlying the suit. Kneupper Decl. ¶¶ 31, 33. The Court finds counsel faced considerable risk in pursuing a RICO class action and in achieving beneficial results for class members. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *30 (S.D. Ill. Dec. 13, 2018) ("[S]uccessful RICO actions are exceedingly rare. . . . Successful RICO class actions are rarer still." (citations omitted)); *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) ("[T]he statistical record indicates that in 98 percent of the RICO appellate cases surveyed, which do not include RICO actions dismissed by the district courts but not appealed, plaintiffs and counsel invested extensive time and energies in litigation only to come away with a total loss.").

### 3.   Benefits Beyond Cash Settlement Fund

The Court finds class counsel has achieved benefits beyond the cash settlement fund. The Keto products at issue in the alleged fraud are no longer being sold, their websites have been removed, and the companies involved no longer appear to be operating. ECF No. 263 at 18; Kneupper Decl. ¶ 32. Additionally, third-party vendors who knowingly assist in fraudulent schemes are now aware that they may be held liable for the damages incurred, which may prevent such actions. *See* ECF No. 45 at 16–24. And finally, the evidence obtained in the Florida Action because of the settlement agreements in this matter resulted in a $12.5 million settlement that will benefit this class.

/ / /

/ / /

####	4.	Financial Burden to Counsel and Contingent Nature of Fee

Class counsel took this matter on a contingent basis and incurred a significant financial burden. They had no outside funding and have litigated this case without compensation for over five years by advancing $142,429.02 in costs from personal assets or proceeds of other litigation. ECF No. 263 at 22; Kneupper Decl. ¶ 34. This substantial risk and contingent nature weigh in favor of granting the requested fees. *See Testone v. Barlean's Organic Oils, LLC,* No. 319CV00169RBMBGS, 2023 WL 2375246, at *6 (S.D. Cal. Mar. 6, 2023) (finding an upward adjustment of one-third of the common fund for attorney's fees justified in part by contingent nature of the fee, four years of litigation without compensation or outside funding, and an advance of almost $160,000 in out-of-pocket expenses).

####	5.	Conclusion Regarding Attorney's Fees

Considering the factors above, the Court finds class counsel's request for $45,570.98 in attorney's fees is reasonable and grants the request.

###	B.	Costs and Expenses

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014)). "Such an award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (citation omitted). Courts have found "meals, hotels, and transportation; photocopies; postage, telephone, and fax; filing fees; messenger and overnight delivery; online legal research; class action notices; experts, consultants, and investigators; and mediation fees" to be "reasonable and necessary" litigation costs in class actions. *Id.* (omitting numerical designations).

Here, class counsel requests $91,980.48 in costs and $50,448.54 for notice expenses that would normally be charged to a fee-paying client. ECF Nos. 263-8; 263-9; 267 at 6;

*see In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1177. The Court finds them to be reasonable and necessary costs and expenses and approves the request. S*ee In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1177.

### C. Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments" to compensate them "for the risks they take and their vanguard role in the class action." *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003). "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted).

Mrs. Sihler and Mrs. Bavencoff are the two named Plaintiffs in this matter as well as the related Florida Action. They were each deposed in this lawsuit and separately deposed in the Florida Action. ECF No. 263 at 33; Kneupper Decl. ¶ 37. They also participated in multiple mediations in both lawsuits. Kneupper Decl. ¶ 37. Each named Plaintiff performed "a substantial amount of work in both cases" and regularly communicated with class counsel about these matters. *Id.* Neither Mrs. Sihler nor Mrs. Bavencoff will receive incentive awards in the Florida Action because they are not permitted in that circuit. *See Johnson v. NPAS Sols.*, LLC, 975 F.3d 1244, 1258–61 (11th Cir. 2020). Class counsel did not tell the named Plaintiffs that they must support these settlements to receive an incentive award. Kneupper Decl. ¶ 36. Also, class counsel did not tell them that if they objected to the settlements or did not support them, they would jeopardize the settlements or they would not be entitled to anything. *Id.*

The Court finds it appropriate to grant the request for incentive awards of $6,000 each to Mrs. Sihler and Mrs. Bavencoff to compensate them for their work and commitment to litigating this matter for the past several years. *See Rodriguez*, 563 F.3d at 958-59. Their work as named Plaintiffs resulted in important cooperation in this case that ultimately led to a $12.5 million settlement in the Florida Action. Additionally, there is no

indication that Mrs. Sihler or Mrs. Bavencoff knew the Court would approve incentive awards for them, so the awards could not have influenced their views towards the settlements.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlements [ECF No. 264] and **GRANTS** Plaintiffs' Motion for Attorney's Fees, Costs, and Incentive Award [ECF No. 263].

The Court **ORDERS** the parties to undertake the obligations set forth in the settlement agreements that arise out of this Order.

The Court **AWARDS** to class counsel Kneupper & Covey, PC $45,570.98 in attorney's fees and $142,429.02 in costs and expenses.

The Court **AWARDS** an incentive award of $6,000 to Janet Sihler and an incentive award of $6,000 to Charlene Bavencoff.

The Court **DIRECTS** the Clerk of Court to enter a separate judgment of dismissal with prejudice, releasing all claims included in Plaintiffs' Second Amended Complaint against Defendants pursuant to the settlement agreements (with the exception of any class members who timely requested exclusion from the settlements), and to close this case.

**IT IS SO ORDERED.**

Dated: November 24, 2025

_____
Honorable Linda Lopez
United States District Judge